IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 24-cv-02762-SKC-KAS

ANTOINE GRISSON,

     Plaintiff,

v.

PEOPLEREADY,
PAM GAMBOA,
SHAWN BRUCHELLA, also known as Shawn Buchalla, and
FRONTIER FERTILIZER,

     Defendants.

---

**ORDER ON MOTIONS TO DISMISS (Dkt. 18, 34, 34-1)**

---

This matter is before the Court on Defendant Frontier Fertilizer and Chemical Co.'s Motion to Dismiss (Dkt. 18 ("Frontier's Motion") and Defendants PeopleReady, Inc., Shawn Buchalla, and Pam Gamboa's Motion to Dismiss (Dkt. 34) and Memorandum in Support of Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 34-1) ("PeopleReady Defendants' Motion"). Plaintiff Antoine Grisson filed Responses (Dkt. 25, 37), respectively, in opposition to these Motions, and Defendants filed Replies (Dkt. 30, 39). The Court has reviewed the briefing, the entire case file, and the applicable law. For the following reasons, the Motions (Dkt. 18, 34) are **granted** and Plaintiff's Second Amended Complaint (Dkt. 8) is **dismissed without prejudice**.

## I.  Background

This employment discrimination lawsuit arises from pro se Plaintiff's employment with Defendant PeopleReady, a temporary staffing agency, which placed him at jobs with Defendant Frontier Fertilizer. Plaintiff, who is African American and has a learning disorder and bipolar disorder, alleges that both corporate Defendants engaged in "discriminatory wage practices" by "coordinat[ing] to pay [him] lower wages than non[-]protected workers for [the] same work." Dkt. 8 at pp.6-7.

His employment with PeopleReady as a laborer began on March 25, 2021. *Id*. at 9. Around July 4, 2023, Plaintiff complained to PeopleReady's human resources department about branch manager[1] Buchalla's purportedly discriminatory practice of removing Plaintiff from jobs in retaliation for Plaintiff's complaints about Buchalla. *Id*. Plaintiff alleges that "similar[ly] situated employees who are not members of Plaintiff['s] protected class [were] treated more favorably" by being given "more job opportunities" "better pay," "overtime opportunities," and "health benefits." *Id*. at p.9. Plaintiff also complained to Frontier Fertilizer's human resources department about the incorrect pay he received for his work. *Id*.

He further alleges, without supporting factual allegations, that both corporate Defendants "manipulated time records," "failed to pay for all hours worked,"

---

[1] *See* Dkt. 8-1 at pp.2 n.3 (identifying Shawn Buchalla as PeopleReady's "Branch Manager").

"misclassified [Plaintiff's] work duties to justify lower pay," "failed to process wage correction," "denied proper job classification," "created dual time-keeping records," and "denied proper meals and rest breaks." *Id.* at p.7. Plaintiff also alleges, again without supporting factual allegations, that Defendant Buchalla "directed better paying jobs to non-protected workers," "manipulated time records," "denied overtime opportunities," "made derogatory discriminat[ory] statements towards Plaintiff," "retaliated against wage and discrimination complaint," and "failed to process wage correction." *Id.* at p.8. Defendant Gamboa allegedly "advised denying [Plaintiff's] valid wage claim," "dismissed documented wage violation," "facilitated retaliatory response to wage and discrimination complaint," and "failed to ensure compliance with all applicable state and federal laws." *Id.*

As a result of the alleged conduct, Plaintiff asserts the following claims:[2] (1) discrimination based on a conviction record in violation of Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act ("CADA"); (2) retaliation in violation of Title VII and CADA; (3) violation of the Fair Credit Reporting Act; (4) violation of the Colorado Consumer Credit Reporting Act; (5) defamation against Defendant Buchalla; (6) intentional infliction of emotional distress; and (7) negligent hiring and retention against PeopleReady. *Id.* at pp.10-13.

Finally, Plaintiff represents that he exhausted administrative remedies by "fil[ing] charges of discrimination alleging race, color, and origin discrimination and

---

[2] Unless otherwise noted, the claims are asserted against all Defendants.

retaliation" under Title VII and CADA with the Equal Employment Opportunity Commission and the Colorado Civil Rights Division. *Id.*

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on grounds that Plaintiff failed to exhaust his administrative remedies and he has failed to state actionable claims.

## II. Legal Standards

### A.    Pro Se Plaintiff

Plaintiff is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint").

### B.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id*. at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, a court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the

truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### C.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Finally, a plaintiff may not raise

6

new allegations in response to a motion to dismiss to bolster a complaint subject to Rule 12(b)(6) attack. *See Smith v. Pizza Hunt, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010).

## III.    Analysis

### A.    Frontier Fertilizer's Motion to Dismiss (Dkt. 18)

#### 1.    Exhaustion of Administrative Remedies: Title VII and CADA Claims (Claims 1 and 2)

Frontier Fertilizer seeks dismissal of the Title VII and CADA claims because Plaintiff failed to exhaust administrative remedies as to those claims asserted against it. (Dkt. 18 at pp.4-7). In support, Frontier Fertilizer points to the CCRD's Notice of Determination (Dkt. 8-1) ("CCRD's Notice"), which was filed with the operative complaint. *Id.*

##### a.    Title VII Exhaustion

A timely administrative charge is a prerequisite to asserting Title VII and CADA claims in the District Court. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); COLO. REV. STAT. § 24-34-306(14) (CADA). A complainant must file a formal charge within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Under the Tenth Circuit's decision in *Lincoln v. BNSF Railway Company*, exhaustion of administrative remedies is not a jurisdictional pre-requisite to a Title VII action. *Lincoln*, 900 F.3d 1166, 1185 n.10 (10th Cir. 2018). Thus, "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident . . . does not bar a federal court from assuming jurisdiction over a claim." *Id.* at 1183-85. Instead,

7

a failure to exhaust a Title VII claim is considered an affirmative defense. *See Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169 (10th Cir. 2018). Thus, the Court construes Frontier's Motion as raising an affirmative defense of failure to exhaust. *See Lincoln*, 900 F.3d at 1185. The affirmative defense of failure to exhaust administrative remedies is appropriate in a motion to dismiss if "the grounds for the defense appear on the face of the complaint." *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

CCRD's Notice identifies only one respondent, PeopleReady, and discusses the allegations against PeopleReady and its defenses. Dkt. 8-1 at pp.1-2. CCRD's Notice also identifies the individuals the CCRD interviewed as part of its investigation into Plaintiff's Title VII and CADA claims. *Id.* at p.2. None of the interviewees were Frontier Fertilizer employees or former employees. *Id.* (listing Plaintiff, PeopleReady, and two former PeopleReady employees). Neither Frontier Fertilizer nor any of its employees are mentioned anywhere in the CCRD's Notice. Finally, the CCRD's Notice advises Plaintiff of his deadline to commence a civil litigation "based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the [CCRD]." *Id.*

Plaintiff argues, however, that he "did name Frontier Fertilizer in his initial complaint," and the "failure to list Frontier in the right to sue letter was an error by the agency, not [by him]." Dkt. 25 at p.3. In support he cites Exhibit A to his Response, which is purportedly his "Formal Complaint to the CCRD for Mishandling of

8

Investigation." *Id.* at pp.7-9. However, that is neither the Charge of Discrimination filed with the CCRD nor Plaintiff's discrimination complaint filed with the CCRD. That "formal complaint," rather, concerns Plaintiff's "formal grievance regarding the investigation into" the discrimination complaint he "filed with [the EEOC] but investigated by [the CCRD]." *Id.* at p.8. Nevertheless, Plaintiff does not mention Frontier Fertilizer or any of its employees anywhere in that document.

Exhibit B to Plaintiff's Response also does not support Plaintiff's argument. *See* Dkt. 25 at pp. 11-13. That exhibit is the "CCRD Interview Record of Sean Buchalla [PeopleReady's branch manager] dated 6/13/2024." *Id.* at p.10. The interview notes also reflect that PeopleReady was the sole respondent in the CCRD proceedings, that PeopleReady placed Plaintiff at temporary job sites, that PeopleReady controlled whether to give Plaintiff and other employees "show-up" pay when they were released from job assignments soon after arriving at the job site, and that Defendant Buchalla ran a background check on Plaintiff as part of PeopleReady's job placement process. *Id.* at pp.11-12. In sum, neither Exhibit A nor Exhibit B support Plaintiff's argument that Frontier Fertilizer's absence from the CCRD proceedings and omission from the CCRD Notice was CCRD's fault.

Next, Plaintiff relies on *Romero v. Union Pacific Railroad*, 615 F.2d 1303 (10th Cir. 1980) for the proposition that "claims against parties not named in a charge [may proceed], where there was actual notice and a clear relationship between entities." *Id.* at p.3. While the Tenth Circuit agreed with other courts "that the omission of a

party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII," the court adopted four factors to evaluate that omission and noted that "additional factors may be relevant." *Romero*, 615 F.2d at 1311-12. Those four factors are: (1) "whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;" (2) "whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;" (3) "whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;" and (4) "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Id.* at 1312 (citation omitted).

Though Plaintiff relies on *Romero*, he discusses only one factor: prejudice. Dkt. 25 at p.3 (claiming no prejudice because "Frontier exercised direct control over [P]laintiff[']s work condition, hours, and discipline through its supervisors."). In reply, Frontier Fertilizer argues that it incurred actual prejudice because it "was deprived of the opportunity to preserve documents as a result of being excluded from the EEOC process." Dkt. 30 at p.10. This alone is grounds to find that *Romero* does not save Plaintiff's Title VII claims from dismissal. Because Plaintiff does not address the other *Romero* factors, the Court declines to do so on his behalf. *See Hill v. Ciolli*, No.

10

23-cv-02539-CNS-KAS, 2024 WL 4333367, at *4 (D. Colo. Sept. 27, 2024) ("While courts must liberally construe the filings of a pro se plaintiff, they should not be the pro se litigant's advocate or 'supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on the plaintiff's behalf.") (italics omitted) (quoting *Whitney*, 113 F.3d at 1175).

Plaintiff next argues that Frontier Fertilizer's absence from the CCRD proceedings does not warrant dismissal of his claims against it because it is "a joint employer" with PeopleReady. *Id.* at 3. In support, he cites *Knitter v. Corvalis Military Living, LLC*, 758 F.3d 1214 (10th Cir. 2014) and *Browning-Ferris Industries of California, Inc. v. NLRB*, 911 F.3d 1195 (D.C. Cir. 2018). *Id.* However, neither case supports Plaintiff's argument because neither case concerned a failure to exhaust administrative remedies. In *Knitter*, the joint employer test arose in the context of a plaintiff's quest to hold two entities liable for a purported Title VII violation. *See Knitter*, 758 F.3d at 1218, 1226, 1228-31 (affirming a property management company's dismissal upon finding the joint employer doctrine did not render it an employer of a plaintiff who performed handyman services under contract between the property management company and a handyman company). In *Browning-Ferris Industries*, the joint employer test arose in the context of a local union's petition to represent workers at a recycling plant who worked under contract between the recycling plant and a temporary labor services agency. *See Browning-Ferris Indus.*, 911 F.3d at 1199.

The Court therefore finds that the joint employer theory does not save Plaintiff's Title VII claims against Frontier Fertilizer from dismissal for failure to exhaust.

### b.      CADA Exhaustion

Though a failure to exhaust is not jurisdictional under Title VII, it is under CADA. *See* COLO. REV. STAT. § 24-34-306(14) ("No person may file a civil action in district court based on an alleged discriminatory or unfair practice . . . without first exhausting the proceedings and remedies available"). "To properly exhaust administrative remedies under CADA, a plaintiff must file a timely charge of discrimination with the CCRD." *Holsome v. Tek-Experts (Colorado), Inc.*, No. 22-cv-00092-DDD-MDB, 2023 WL 2242502, at *3 (D. Colo. Feb. 27, 2023) (citing COLO. REV. STAT. § 24-34-306(1)(a)).

Here, Frontier Fertilizer lodges a factual attack on the Court's subject matter; therefore, the Court may consider material outside the Complaint's allegations. *See Johnson v. SSA Group LLC*, No. 25-cv-00860-PAB-TPO, 2026 WL 100548, at *2 (D. Colo. Jan. 14, 2026). As already discussed, the CCRD's Notice identifies only one respondent: PeopleReady. *See* Dkt. 8-1 at 1. Therefore, the Court lacks jurisdiction over Plaintiff's CADA claim against Frontier Fertilizer.

Because Plaintiff failed to exhaust administrative remedies as to his Title VII and CADA claims against Frontier Fertilizer, the Court **grants** Frontier's Motion and **dismisses** those claims **without prejudice**. *Brereton*, 434 F.3d at 1218 (where

12

the court lacks subject matter jurisdiction, dismissal is without prejudice); *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (noting that a Title VII claim's dismissal for failure to exhaust administrative remedies must be without prejudice).

### 2.    Claims 3, 4, 5, and 7: Adequacy of Allegations against Frontier Fertilizer

Next, Frontier Fertilizer argues that Plaintiff's claims against it in connection with Claims 3, 4, 5, and 7 are entirely deficient and justify dismissal. Dkt. 18 at pp.7-9.

"[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Allegations that explain each defendant's involvement "permit[] the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits." *Id.*

Claim 3 concerns an alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* In support of Claim 3, Plaintiff alleges that "Defendant Buchalla obtained Plaintiff['s] consumer report without proper authorization and used it to discriminate against Plaintiff," and "Defendants PeopleReady and Shawn Buchalla violated the [Fair Credit Reporting Act] by obtaining and using Plaintiff['s] consumer report without prior authorization." Dkt. 8 at p.11. As Frontier Fertilizer argues in its Motion, nowhere does Plaintiff allege that Defendant Buchalla obtained the

13

consumer report at Frontier Fertilizer's direction or on its behalf. Dkt. 18 at pp.7-8. Plaintiff has failed to notify Frontier Fertilizer what **it** did to violate the Fair Credit Reporting Act, when it did it, and how its actions harmed Plaintiff. Therefore Claim 3 is **dismissed without prejudice** to the extent it is asserted against Frontier Fertilizer.

Claim 4 fares no better. That claim concerns a violation of the Colorado Consumer Reporting Act, Colo. Rev. Stat. § 12-14.3-101 *et seq*. In support, Plaintiff alleges that "Defendant Buchalla obtained Plaintiff['s] consumer report without proper authorization and used it to discriminate against Plaintiff." Dkt. 8 at p.12. As with Claim 3, Plaintiff fails to notify Frontier Fertilizer what it did to violate the Colorado Consumer Reporting Act, when it did it, and how its actions harmed Plaintiff. Therefore, Claim 4 is **dismissed without prejudice** to the extent it is asserted against Frontier Fertilizer.

Claim 5 is a defamation claim. Plaintiff alleges that "Defendant Buchalla made [a] false and derogatory statement about Plaintiff to others, damaging Plaintiff['s] reputation." Dkt. 8 at p.12. This claim contains no allegations against Frontier Fertilizer. Therefore, Claim 5 is **dismissed without prejudice** to the extent it is asserted against Frontier Fertilizer.

Claim 7 is a claim for negligent hiring and retention. In support, Plaintiff alleges that "Defendant PeopleReady negligently hired and retained Buchalla, who engaged in discriminatory and retaliatory conduct" and "posed a foreseeable risk of

harm to Plaintiff." Dkt. 8 at p.13. This claim contains no allegations against Frontier Fertilizer. Therefore, Claim 7 is **dismissed without prejudice** to the extent it is asserted against Frontier Fertilizer.

### 3.    Claim 6: Intentional Infliction of Emotional Distress

In support of his claim for intentional infliction of emotional distress (Claim 6), Plaintiff alleges that "[a]ll Defendants['] conduct, including the discriminatory and retaliatory actions[,] caused Plaintiff severe emotional distress." Dkt. 8 at p.12. Elsewhere in the Complaint, Plaintiff alleges that Frontier Fertilizer engaged in the following discriminatory practices: it coordinated with PeopleReady to "pay Plaintiff lower wages than none protected [sic] workers for same work"; "falsified time records;" "failed to pay for all hours worked;" "misreported hours to PeopleReady;" "failed to process wage correction;" "denied proper job classification;" "created dual time-keeping records;" and "denied proper meals and rest breaks." *Id*. at p.7.

Frontier Fertilizer argues that Plaintiff's claim fails because its alleged conduct "is not extreme harassment, ridicule, humiliation or anything beyond discrimination," and "[not] [e]very claim for discrimination and retaliation . . . rise[s] to the level of outrageous conduct."  Dkt. 18 at pp.9-10. For the reasons explained below, the Court agrees.

To state an actionable claim for intentional infliction of emotional distress, a plaintiff must plausibly allege (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in the conduct recklessly or with the intent of

causing the plaintiff severe emotional distress; and (3) the plaintiff incurred severe emotional distress which was caused by the defendant's conduct. *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). "Outrageous conduct" is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Id.* (quoting *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988)).

"In Colorado, the tort of intentional infliction of emotional distress is extremely limited." *Yarbrough v. ADT Sec. Servs., Inc.*, No. 07-cv-01564-LTB-KMT, 2008 WL 3211284, at *8 (D. Colo. Aug. 6, 2008). To illustrate the tort's limited nature, courts have dismissed intentional infliction of emotional distress claims premised on alleged wrongful termination. *See id.* (citing *Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1021 (D. Colo. 2000); *Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D. Colo. 1995); *Barham v. Scalia*, 928 P.2d 1381, 1385-86 (Colo. App. 1996) (stating, "the mere firing of an employee, without conduct specifically calculated to cause emotional distress to the employee, is not enough to support a claim based on outrageous conduct").

In *Yarbrough*, the court considered assertions regarding an employer's alleged inadequate investigation of an incident, a supervisor's lies to upper management, the employer's issuance of a written warning to the plaintiff, company officials' efforts to force a co-worker to lie about the plaintiff's conduct, and company officials' coordinated efforts to concoct false bases to support the plaintiff's wrongful termination. *Id.* The court determined that, as a matter of law, these assertions "do

not rise to the level of conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at \*9 (quoting *Culpepper*, 877 P.2d at 882 (Colo. 1994)).

In *Katz v. City of Aurora*, the court dismissed an intentional infliction of emotional distress claim premised on conclusory allegations that the defendant's conduct was outrageous because the plaintiff was "railroaded . . . out of the police department[.]" 85 F. Supp. 2d at 1021. The court also dismissed the claim because it was based on the same allegations as those forming the basis for the plaintiff's discrimination claim. *Id.* (quoting *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997) ("[w]here the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis of a claim of discrimination, and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)").

Here, the allegations Plaintiff relies upon to support his intentional infliction of emotional distress claim are the same as the allegations on which Plaintiff's Title VII and CADA claims against Frontier Fertilizer rest. *Compare* Dkt. 8 at p.7 *with id.* at p.12. Additionally, Plaintiff's allegations fall well short of plausibly alleging that Frontier Fertilizer's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yarbrough*, 2008 WL 3211284, at

17

*9; *Culpepper*, 877 P.2d 877, 882. Therefore, Claim 6 is **dismissed without prejudice** to the extent it is asserted against Frontier Fertilizer.

To summarize, all seven of Plaintiff's claims against Frontier Fertilizer are dismissed without prejudice. The Court now turns to Plaintiff's claims against Defendants PeopleReady and Buchalla.

### B.    PeopleReady, Buchalla, and Gamboa's Motion to Dismiss (Dkt. 34, 34-1)

#### 1.    Allegations against Gamboa

Though Plaintiff named Pam Gamboa a defendant, his allegations against her are limited to: "[Gamboa is] [a]n attorney employed by PeopleReady[,] [r]esponsible for handling discrimination complaints[,] investigating employee complaints[.] advising on personal matters" and "personally involved in . . . dismissing discrimination complaints," "implementing retaliatory actions at law level," and "facilitating retaliatory practices." Dkt. 8 at p.7. Plaintiff further states that "Gamboa handled legal compliance and accommodation request." *Id*. These unadorned and conclusory allegations are disconnected from any of Plaintiff's seven claims for relief. Further, they fail to explain what Defendant Gamboa did to him, when she did it, how her actions harmed Plaintiff, and what specific legal right Plaintiff believes Gamboa violated. *Nasious*, 492 F.3d at 1163. Therefore, Defendant Gamboa is **dismissed** from this lawsuit.

### 2.    Discrimination under Title VII & CADA (Claim 1)

Plaintiff alleges that Defendants PeopleReady and Buchalla discriminated against him by providing "similar[ly] situated employees who are not members of Plaintiff['s] protected class" more job opportunities, better pay, overtime opportunities, and health benefits. Dkt. 8 at p.9. He claims that Defendants discriminated against him based on his conviction record and that they limited him to "jobs with other felons." *Id*. at p.10.

Under Title VII, it is unlawful "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Colorado and federal law apply the same standards to discrimination claims." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010). Therefore, the Court need only conduct one analysis for both the Title VII and CADA discrimination claims.

An employee establishes an unlawful employment practice if he can demonstrate that race, color, religion, sex, or national origin "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). A plaintiff can either set forth "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or "by using the burden-shifting framework" set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 793 (1973). *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).

"To set forth a prima facie case of discrimination, a plaintiff must establish that (1) [he] is a member of a protected class, (2) [he] suffered an adverse employment action, (3) [he] qualified for the position at issue, and (4) [he] was treated less favorably than others not in the protected class." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). While Plaintiff is not required to establish a prima facie case in his complaint, he must allege sufficient facts supporting the elements of his causes of action to set forth plausible claims. *Khalik*, 671 F.3d at 1192.

Here, Plaintiff expressly asserts that Defendants discriminated against him "based on conviction record." Dkt. 8 at p.10. Because one's status as a convicted felon is not a protected class under either Title VII or CADA, Plaintiff's discrimination claim fails. However, the Court must liberally construe Plaintiff's allegations; therefore, the Court also considers Plaintiff's status as an African American and someone with a mental disability.

"[T]o plausibly allege discriminatory animus based on differential treatment, a complaint must 'allege some set of facts that taken together plausibly suggest differential treatment of similarly situated employees.'" *Smith v. McDonough*, No. 20-1321 KK/JFR, 2021 WL 4656066, at *5 (D.N.M. Oct. 7, 2021) (quoting *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014)). Facts that help establish plausibility include "who engaged in the alleged discriminatory conduct at issue,

when and in what context the conduct occurred, and why the plaintiff believes the conduct 'was connected with discriminatory animus.'" *Id.* (quoting *Khalik*, 671 F.3d at 1191). Though Plaintiff identifies his race and mental disability,[3] *see* Dkt. 8 at p.6, he does not allege much beyond asserting that Defendant Buchalla "made derogatory discriminat[ory] statements towards Plaintiff" and that "similar[ly] situated employees who are not members of Plaintiff['s] protected class [were] treated more favorably, including . . . more job opportunities," "better pay," "overtime opportunities," and "health benefits." *Id.* at 8-9. Plaintiff, however, does not allege how those employees were similarly situated to him. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (explaining that "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."). These conclusory allegations do not give rise to an inference of unlawful discrimination. *See Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (stating that the allegations must "give rise to an inference of unlawful discrimination.").

Because Plaintiff's allegations fall well short of plausible, Claim 1 is **dismissed without prejudice** to the extent it is asserted against Defendants PeopleReady and Buchalla.

---

[3] To the extent Plaintiff seeks to assert a disability discrimination claim, Title VII does not apply; rather, the Americans with Disabilities Act protects against disability discrimination in the workplace.

### 3.     Retaliation under Title VII & CADA (Claim 2)

Plaintiff also alleges that both Defendants retaliated against him for complaining about their discriminatory practices by removing him from certain jobs. Dkt. 8 at pp.9, 11.

To establish a prima case of retaliation, Plaintiff must first show: (1) he engaged in protected conduct related to Title VII or CADA discrimination; (2) he suffered an adverse employment action thereafter; and (2) there is a causal connection between his protected conduct and the adverse action. *Laul v. Los Alamos Nat'l Lab'ys*, 765 F. App'x 434, 441-42 (10th Cir. 2019); *see also Schone v. Sodexo, Inc.*, No. 19-cv-02283-SKC, 2021 WL 915937, at *7 (D. Colo. Mar. 10, 2021) (noting that the analysis for state and federal retaliation claims is identical).

Here, Plaintiff alleges that after he "filed discrimination, retaliation, and wage complaints with the [EEOC] and CCRD, PeopleReady retaliated by reducing [his] work hours." Dkt. 8 at p.11. To the extent that Plaintiff's complaints concerned discrimination he faced as a convicted felon, his retaliation claim fails because his complaints did not concern discrimination that violates Title VII or CADA. *See Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009) ("Opposition is protected . . . only if it is opposition to a practice made an unlawful employment practice by Title VII.") (internal quotation marks and citation omitted); *see also Tracy v. Vail Resorts, Inc.*, No. 21-4145, 2022 WL 16557393, at *4 (10th Cir. Nov. 1, 2022) (finding that Title VII retaliation claim failed to the extent it was premised on termination following

complaints about workplace safety, which was not conduct protected by Title VII). To the extent that Plaintiff complained of discrimination that violates Title VII or CADA, his allegations are threadbare and conclusory. Plaintiff merely speculates that his work hours were reduced because of the complaints he filed with the EEOC and CCRD. Plaintiff has alleged no facts that permit the Court to reasonably infer that his work hours were reduced in response to his complaints. After all, PeopleReady is a staffing agency, *see* Dkt. 8 at p.6, and a variety of factors could have resulted in reduced work hours. *Cf. Smith*, 2021 WL 4656066, at \*5 (finding discrimination claim implausible where the allegations left open the possibility of a race-neutral reason, such as poor performance, for the alleged conduct.).

Therefore, Claim 2 is **dismissed without prejudice** to the extent it is asserted against Defendants PeopleReady and Buchalla.

### 4. Fair Credit Reporting Act and Colorado Consumer Credit Report Act Violations (Claims 3 and 4)

Plaintiff alleges that "Defendant Buchalla obtained Plaintiff['s] consumer report without proper authorization and used it to discriminate against Plaintiff" and, resultingly, "Defendants PeopleReady and Shawn Buchalla violated the [federal and state Credit Reporting Acts]." Dkt. 8 at pp.11-12.

To state a claim "for obtaining a credit report without a proper purpose, a plaintiff must [plausibly allege] (1) there was a consumer report; (2) defendant used or obtained it; (3) defendant did so without a permissible statutory purpose; and (4)

23

defendant was negligent (or willful) in doing so." *Grays v. Kittredge Co Partners*, No.

20-cv-00208-WJM-SKC, 2021 WL 1300601, at *6 (D. Colo. Feb. 17, 2021).

The Federal Act expressly contemplates use of consumer reports "for

employment purposes." 15 U.S.C. § 1681b(a)(3)(B). Additionally, the Federal Act sets

parameters on use for employment purposes. Specifically, the consumer report may

"not be used in violation of any applicable Federal or State equal employment

opportunity law or regulation[.]" 15 U.S.C. § 1681b(b)(1)(A)(ii). Additionally, the

Federal Act states:

> a person may not procure a consumer report, or cause a consumer report
> to be procured, for employment purposes with respect to any consumer,
> unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the
> consumer at any time before the report is procured or caused to be
> procured, in a document that consists solely of the disclosure, that a
> consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be
> on the document referred to in clause (i)) the procurement of the report
> by that person.

15 U.S.C. § 1681b(b)(2)(A).

The Colorado Consumer Reporting Act contains similar safeguards and

restrictions on use. Specifically, the State Act allows a consumer reporting agency to

provide a consumer report "[t]o a person which the consumer reporting agency has

reason to believe . . . Intends to use the information for employment purposes only if

an applicant or employee is first informed that a credit report may be requested in

24

connection with his or her application for employment and the consumer consents in writing to the same[.]" COLO. REV. STAT. § 5-18-104(1)(c)(II).

Here, Plaintiff baldly alleges that Defendants PeopleReady and Buchalla obtained his consumer report "without proper authorization." But the Court does not know what that means. Does Plaintiff mean that the report was obtained for an improper purpose? Does Plaintiff mean that Defendants did not clearly and conspicuously disclose, in writing to Plaintiff, that they were going to obtain his consumer report for employment purposes? Or does Plaintiff mean that he did not provide written authorization for Defendants to obtain his consumer report?

Because Plaintiff's allegations are conclusory and threadbare, he fails to state actionable claims for violations of the Fair Credit Reporting Act and the Colorado Consumer Credit Reporting Act. Therefore, Claims 3 and 4 are **dismissed without prejudice** to the extent they are asserted against Defendants PeopleReady and Buchalla.

### 5.    Defamation (Claim 5)

Plaintiff alleges that "Defendant Buchalla made [a] false and derogatory statement about Plaintiff to others, damaging Plaintiff['s] reputation." Dkt. 8 at p.12. Plaintiff does not identify the allegedly defamatory statement; however, on a liberal construction, this claim appears to be based on Defendant Buchalla's statement to Plaintiff that, due to the felony conviction, Plaintiff could only be assigned to jobs with other felons. *Id.* at p.10.

To state a claim for defamation, Plaintiff must plausibly allege that (1) Defendant Buchalla made a statement; (2) which was published to third persons; (2) that the substance of the statement was false when published; and (4) Defendant Buchalla knew it was false or made the statement with reckless disregard as to whether it was false or not. *Zerr v. Johnson*, 894 F. Supp. 372, 376 (D. Colo. 1995).

Here, Plaintiff's conclusory and threadbare allegations fail to satisfy the elements of a defamation claim. Plaintiff does not identify the statement made, to whom it was spoken, why the statement was false, and whether Defendant Buchalla knew the statement was false at the time it was made or recklessly disregarded whether it was false. If Plaintiff's claim rests on any statement that his felony conviction would limit his job assignments, that statement was made to him, not a third person, and it was apparently true, according to the background check. Therefore, Plaintiff fails to state a defamation claim and Claim 5 is **dismissed without prejudice** to the extent it is asserted against Defendant Buchalla.

### 6.    Intentional Infliction of Emotional Distress (Claim 6)

Plaintiff alleges that "[a]ll Defendants['] conduct, including the discriminatory and retaliatory actions[,] caused Plaintiff severe emotional distress." Dkt. 8 at p.12. Elsewhere in the Complaint, Plaintiff alleges that PeopleReady "failed [to] properly process payroll" and "manipulated time records to reduce wages." *Id.* at p.7. For reasons discussed in section III(A)(3), above, Plaintiff has failed to state a claim for

intentional infliction of emotional distress. Therefore, Claim 6 is **dismissed without prejudice** to the extent it is asserted against Defendants PeopleReady and Buchalla.

### 7. Negligent Hiring and Retention (Claim 7)

Plaintiff alleges that "Defendant PeopleReady negligently hired and retained Buchalla, who engaged in discriminatory and retaliatory conduct" and "posed a foreseeable risk of harm to Plaintiff." Dkt. 8 at p.13.

To state a claim for negligent hiring or retention, a plaintiff must allege "the usual elements of negligence—duty, breach, injury, causation—and the establishment of an agency relationship between the employer and alleged employee." *Nielsen v. Archdiocese of Denver*, 413 F. Supp.2d 1181, 1184 (D. Colo. 2006) (citation omitted); *see also Valles v. Gen-X Echo B, Inc.*, No. 13-cv-00201-RM-KLM, 2013 WL 5861653, at *6 (D. Colo. Oct. 8, 2013), report and recommendation adopted *Valles v. Gen-X Echo B, Inc.*, No. 13-cv-00201-RM-KLM, 2013 WL 5832745 (D. Colo. Oct. 30, 2013) (elements of negligent retention). "An employer will be found liable for negligent hiring and retention if, at the time of hiring, the employer had reason to believe that hiring the employee in question would create an undue risk of harm to others." *Johnson v. USA Truck, Inc.*, No. 06-cv-00227-EWN-MEH, 2007 WL 2461645, at *3 (D. Colo. Aug. 27, 2007) (citing *Van Osdol v. Vogt*, 908 P.2d 1122, 1133 (Colo. 1996)). When considering a negligent hiring claim, "the court does not inquire into the employer's broad reasons for choosing this particular employee for the position, but instead looks to whether the specific danger which ultimately

manifested itself could have reasonably been foreseen at the time of hiring." *Van Osdol*, 908 P.2d at 1132 n.17.

Defendants argue these claims are "barred by workers' comp exclusivity." Dkt. 34-1 at p.13. Plaintiff does not contest this assertion. The Court agrees with Defendants. "Recovery of workers' compensation benefits is an employee's exclusive remedy against an employer for tortious actions resulting in personal injury."[4] *Middlemist v. BDO Seidman, LLP*, 958 P.2d 486, 494 (Colo. App. 1997) (dismissing, on summary judgment, plaintiff's claims for negligent hiring and supervision that sought damages for emotional pain and suffering and mental anguish based on plaintiff's firing).

Workers' compensation exclusivity aside, these claims are also subject to dismissal because Plaintiff fails to plausibly allege them. The Complaint contains no factual allegations supporting causation, or factual allegations regarding what would have given this employer reason to believe that hiring Buchalla would create an undue risk of harm to others. *Johnson,* 2007 WL 2461645, at *3. It merely alleges these claims in conclusory fashion.

Therefore, Claim 7 is **dismissed without prejudice**.

---

[4] The Complaint seeks damages for "emotional distress, mental anguish, and pain and suffering." Dkt. 8, ECF p.15.

### 8.   Fair Labor Standards Act and Colorado Wage Act Claims

Defendants PeopleReady and Buchalla liberally construe Plaintiff's allegations and present arguments on potential claims for violations of the Fair Labor Standards Act and the Colorado Wage Act because the Complaint lists these statutes but only in reference to this Court's jurisdiction. Dkt. 34-1 at pp. 14-15. Plaintiff does not expressly state claims for relief under these statutes. *See* Dkt. 8 p.5 (referencing 29 U.S.C. § 215(a)(3)) & Colo. Rev. Stat. § 8-4-101). He does generally allege Defendants "failed to pay for all hours worked," "misclassified work duties to justify lower pay," and "falsified" or "manipulated" time records. *Id.* at p.7. But he does not assert claims for relief under either of these statutes, even by a liberal construction.

29 U.S.C. § 215(a)(3) prohibits discharge or other forms of discrimination "against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the Fair Labor Standards Act], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]" Similarly, Colo. Rev. Stat. § 8-4-120(1) prohibits an employer from discriminating or retaliating against an employee who has "[f]iled a complaint or instituted or caused to be instituted a proceeding . . . related to wages [or] hours[.]"

There are no factual allegations in the Complaint regarding any complaints Plaintiff filed against these Defendants, or proceedings he instituted or caused to be instituted against them, under the FLSA or the Colorado Wage Act related to the

vague allegations in the Complaint that reference his hours, pay, and time records. According to the Complaint, the only complaint he filed or proceeding he instituted was his charge of discrimination dual-filed with he EEOC and CCRD concerning his allegations of discrimination. Dkt. 8, ECF p.8.

Accordingly, to the extent these claims may exist in the Complaint with a liberal construction, they fail Rule 12(b)(6) and are **dismissed without prejudice**.

*    *    *

For the reasons shared above,

IT IS HEREBY ORDERED that Defendants' Motions to Dismiss (Dkt. 18, 34, 34-1) are **granted**. Plaintiff's claims are **dismissed without prejudice**.

DATED:  March 30, 2026

BY THE COURT:

_____

S. Kato Crews
United States District Judge

30